1

2

3

4

5

6

7

8              IN THE UNITED STATES DISTRICT COURT

9              FOR THE EASTERN DISTRICT OF CALIFORNIA

10   STEVEN DOSS,

11           Petitioner,            No. CIV S-08-2450 MCE DAD P

12       vs.

13   D. K. SISTO, Warden,

14           Respondent.           FINDINGS & RECOMMENDATIONS

15   _____/

16           Petitioner is a state prisoner proceeding pro se with a petition for a writ of habeas

17   corpus pursuant to 28 U.S.C. § 2254.  Petitioner challenges the decision of the California Board

18   of Parole Hearings (hereinafter "Board") to deny him parole at his twelfth parole consideration

19   hearing held on March 7, 2006.  Upon careful consideration of the record and the applicable law,

20   the undersigned will recommend that petitioner's application for habeas corpus relief be granted.

21                        PROCEDURAL BACKGROUND

22           On May 27, 1981, petitioner pled nolo contendere in the Alameda County

23   Superior Court to kidnapping for robbery and was sentenced to a state prison term of life with the

24   possibility of parole.  (Pet. at 1-2.)  Petitioner's minimum eligible parole date was April 20,

25   1987.

26   /////

1

1     The parole consideration hearing which is placed at issue by the instant petition

2   was held on March 7, 2006.  (Answer, Attach. C to Ex. 2 (hereinafter "Decision")).  This was

3   petitioner's twelfth such hearing.  (Id. at 1.)  On that date, a Board panel found petitioner not

4   suitable for release on parole and denied parole for one year.  (Id. at 36.)  Petitioner challenged

5   the Board's decision in a petition for writ of habeas corpus filed in the Alameda County Superior

6   Court.  (Answer, Ex. 2.)  The Superior Court rejected petitioner's claims in a reasoned decision

7   on the merits, stating as follows:

> Petition for writ of habeas corpus is denied.  The Petition fails to
> state a prima facie case for relief.  There is nothing in the record
> presented that indicates that the Board's decision was arbitrary or
> capricious.  Nor is there evidence that the Board abused its
> discretion or power in denying Petitioner's parole.  The Court's
> review of the record is limited to determining whether there is
> "some evidence" to support the Board's decision.  The Board
> clearly stated that it was basing its decision on the fact that
> petitioner had not acquired sufficient parole plans as the Board had
> directed in previous hearing.  The Board indicated that petitioner
> hadn't taken adequate steps to ensure that upon his release in
> California, he had concrete plans with a structured environment for
> housing and a work situation.  In addition the Board indicated that
> any of petitioner's plans also had to contain a structured and
> assured continuation by Petitioner in AA or some similar program.
> Thus there is "some evidence" in the record that supports the
> Board's denial of parole.  There were no violations of Petitioner's
> rights.

(Answer, Ex. 1.)

19     Petitioner challenged the Superior Court's decision in a petition for writ of habeas

20   corpus filed in the California Court of Appeal for the First Appellate District.  (Answer, Ex. 3.)

21   That petition was summarily denied by order dated June 13, 2007.  (Answer, Ex. 5.)  On July 9,

22   2007, petitioner filed a petition for review in the California Supreme Court.  (Answer, Ex. 4.)

23   That petition was summarily denied by order dated September 12, 2007.  (Answer, Ex. 6.)

24   /////

25   /////

26   /////

2

FACTUAL BACKGROUND

The facts underlying petitioner's offense of conviction were described in a psychological report prepared in advance of petitioner's 2006 parole suitability hearing, as follows:

> A review of Mr. Doss's initial Probation Officer's Report indicates that the circumstances of his commitment offense was that Mr. Doss and a co-defendant were convicted of stealing gasoline money and credit cards from a family of four at knifepoint. Mr. Doss inflicted cuts on the victim's hands as she struggled to become free. Ms. Doss and his co-defendant held this family in captivity for period [sic] of time and then transported them to their home. The victims were able to escape later without further harm.
>
> Records indicate that Mr. Doss had an insignificant history of criminality prior to his commitment offense. He accepted culpability for his commitment offense. He stated, "I needed gas for the car." He stated that he has always apologized for the offense and he hasn't talked a lot about it because it's a matter of record. He stated that basically his car ran out of gas. He and a hitchhiker that he had picked up had been drinking and decided to get some gas from the victims. He stated that he now realizes that he should have just left the car where it was and returned later, after he had gotten some money and gotten his car. He said that he also realizes that he should not have picked up the hitchhiker anyway but saw the hitchhiker carrying a sea bag and believed him to be a fellow military person. He said alcohol was clearly a marginalizing factor in the offense in that had he not been drinking, had he not broken up with his wife and been depressed about it, he would most likely have not been involved in the instant offense. Mr. Doss reported to this examiner that he has grown and has matured solely as a result of his incarceration. He stated that his incarceration has had a significant effect on his belief system, he has been clean and sober, and as a result has developed a significantly different perspective on life.

(Answer, Attach. B to Exhibit 2.)

ANALYSIS

I. Standards of Review Applicable to Habeas Corpus Claims

A writ of habeas corpus is available under 28 U.S.C. § 2254 only on the basis of some transgression of federal law binding on the state courts. See Peltier v. Wright, 15 F.3d 860, 861 (9th Cir. 1993); Middleton v. Cupp, 768 F.2d 1083, 1085 (9th Cir. 1985) (citing Engle v.

3

1   <u>Isaac</u>, 456 U.S. 107, 119 (1982)).  A federal writ is not available for alleged error in the

2   interpretation or application of state law.  <u>See</u> <u>Estelle v. McGuire</u>, 502 U.S. 62, 67-68 (1991);

3   <u>Park v. California</u>, 202 F.3d 1146, 1149 (9th Cir. 2000); <u>Middleton</u>, 768 F.2d at 1085.  Habeas

4   corpus cannot be utilized to try state issues <u>de novo</u>.  <u>Milton v. Wainwright</u>, 407 U.S. 371, 377

5   (1972).

6           This action is governed by the Antiterrorism and Effective Death Penalty Act of

7   1996 ("AEDPA").  <u>See</u> <u>Lindh v. Murphy</u>, 521 U.S. 320, 336 (1997); <u>Clark v. Murphy</u>, 331 F.3d

8   1062, 1067 (9th Cir. 2003).  Section 2254(d) sets forth the following standards for granting

9   habeas corpus relief:

10          An application for a writ of habeas corpus on behalf of a
            person in custody pursuant to the judgment of a State court shall
11          not be granted with respect to any claim that was adjudicated on
            the merits in State court proceedings unless the adjudication of the
12          claim -

13              (1) resulted in a decision that was contrary to, or involved
            an unreasonable application of, clearly established Federal law, as
14          determined by the Supreme Court of the United States; or

15              (2) resulted in a decision that was based on an unreasonable
            determination of the facts in light of the evidence presented in the
16          State court proceeding.

17  <u>See also</u> <u>Penry v. Johnson</u>, 532 U.S. 782, 792-93 (2001); <u>Williams v. Taylor</u>, 529 U.S. 362

18  (2000); <u>Lockhart v. Terhune</u>, 250 F.3d 1223, 1229 (9th Cir. 2001).  If the state court's decision

19  does not meet the criteria set forth in § 2254(d), a reviewing court must conduct a de novo review

20  of a habeas petitioner's claims.  <u>Delgadillo v. Woodford</u>, 527 F.3d 919, 925 (9th Cir. 2008).  <u>See</u>

21  <u>also</u> <u>Frantz v. Hazey</u>, 513 F.3d 1002, 1013 (9th Cir. 2008) (en banc) ("[I]t is now clear both that

22  we may not grant habeas relief simply because of § 2254(d)(1) error and that, if there is such

23  error, we must decide the habeas petition by considering de novo the constitutional issues

24  raised.").

25          The court looks to the last reasoned state court decision as the basis for the state

26  court judgment.  <u>Robinson v. Ignacio</u>, 360 F.3d 1044, 1055 (9th Cir. 2004).  If the last reasoned

1  state court decision adopts or substantially incorporates the reasoning from a previous state court

2  decision, this court may consider both decisions to ascertain the reasoning of the last decision.

3  Edwards v. Lamarque, 475 F.3d 1121, 1126 (9th Cir. 2007) (en banc).  Where the state court

4  reaches a decision on the merits but provides no reasoning to support its conclusion, a federal

5  habeas court independently reviews the record to determine whether habeas corpus relief is

6  available under § 2254(d).  Himes v. Thompson, 336 F.3d 848, 853 (9th Cir. 2003); Pirtle v.

7  Morgan, 313 F.3d 1160, 1167 (9th Cir. 2002).  When it is clear that a state court has not reached

8  the merits of a petitioner's claim, or has denied the claim on procedural grounds, the AEDPA's

9  deferential standard does not apply and a federal habeas court must review the claim de novo.

10  Nulph v. Cook, 333 F.3d 1052, 1056 (9th Cir. 2003).

11  II.  Petitioner's Claim

12         A.  Description of Claim

13              Petitioner claims that the Board's 2006 decision finding him unsuitable for release

14  on parole violated his right to due process because "there was no evidence presented at the

15  [hearing] to support the Board's determination that petitioner would pose an unreasonable risk of

16  danger to the public if released from prison."  (Pet. at 6.)  He argues that, in finding him

17  unsuitable for parole based solely on his failure to obtain a commitment to live in a "transitional

18  'structured' live in program," the Board went "beyond their discretion" and acted without

19  "statutory or regulatory support."  (Traverse at 4.)

20         B.  Applicable Legal Standards

21              1.  Due Process in the California Parole Context

22              The Due Process Clause of the Fourteenth Amendment prohibits state action that

23  deprives a person of life, liberty, or property without due process of law.  A litigant alleging a

24  due process violation must first demonstrate that he was deprived of a liberty or property interest

25  protected by the Due Process Clause and then show that the procedures attendant upon the

26  deprivation were not constitutionally sufficient.  Kentucky Dep't of Corrections v. Thompson,

490 U.S. 454, 459-60 (1989); <u>McQuillion v. Duncan</u>, 306 F.3d 895, 900 (9th Cir. 2002).[1]

A protected liberty interest may arise from either the Due Process Clause of the United States Constitution "by reason of guarantees implicit in the word 'liberty,'" or from "an expectation or interest created by state laws or policies." <u>Wilkinson v. Austin</u>, 545 U.S. 209, 221 (2005) (citations omitted). <u>See also</u> <u>Board of Pardons v. Allen</u>, 482 U.S. 369, 373 (1987). The United States Constitution does not, of its own force, create a protected liberty interest in a parole date, even one that has been set. <u>Jago v. Van Curen</u>, 454 U.S. 14, 17-21 (1981); <u>Greenholtz v. Inmates of Neb. Penal</u>, 442 U.S. 1, 7 (1979) (There is "no constitutional or inherent right of a convicted person to be conditionally released before the expiration of a valid sentence."); <u>see also</u> <u>Hayward v. Marshall</u>, 603 F.3d 546, 561 (9th Cir. 2010) ("[I]n the absence of state law establishing otherwise, there is no federal constitutional requirement that parole be granted in the absence of 'some evidence' of future dangerousness or anything else.") (en banc). However, "a state's statutory scheme, if it uses mandatory language, 'creates a presumption that parole release will be granted' when or unless certain designated findings are made, and thereby gives rise to a constitutional liberty interest." <u>McQuillion</u>, 306 F.3d at 901 (quoting <u>Greenholtz</u>, 442 U.S. at 12). <u>See also</u> <u>Allen</u>, 482 U.S. at 376-78; <u>Pearson v. Muntz</u>, 606 F.3d 606, 609 (9th Cir. 2010) ("The principle that state law gives rise to liberty interests that may be enforced as a matter of federal law is long established."); <u>Hayward</u>, 603 F.3d 562-63 ("Although the Due Process Clause does not, by itself, entitle a prisoner to parole in the absence of some evidence of future dangerousness, state law may supply a predicate for that conclusion.")

---

[1] In the context of parole proceedings, the "full panoply of rights" afforded to criminal defendants is not "constitutionally mandated" under the federal Due Process Clause. <u>Jancsek v. Oregon Bd. of Parole</u>, 833 F.2d 1389, 1390 (9th Cir. 1987) (internal quotations and citation omitted). The United States Supreme Court has held that due process is satisfied in the context of a hearing to set a parole date where a prisoner is afforded notice of the hearing, an opportunity to be heard and, if parole is denied, a statement of the reasons for the denial. <u>Hayward v. Marshall</u>, 603 F.3d 546, 560 (9th Cir. 2010) (en banc) (quoting <u>Greenholtz v. Inmates of Neb. Penal</u>, 442 U.S. 1, 16 (1979)). <u>See also</u> <u>Morrissey v. Brewer</u>, 408 U.S. 471, 481 (1972) (describing the procedural process due in cases involving parole issues).

1    In California, a prisoner is entitled to release on parole unless there is "some

2  evidence" of his or her current dangerousness.  Hayward, 603 F.3d at 562 (citing In re Lawrence,

3  44 Cal.4th 1181, 1205-06, 1210 (2008) and In re Shaputis, 44 Cal. 4th 1241 (2008)); Cooke v.

4  Solis, 606 F.3d 1206, 1213 (9th Cir. 2010), pet. for cert. filed (Sept. 2, 2010) (No. 10-333); Pirtle

5  v. California Bd. of Prison Terms, 611 F.3d 1015, 1020 (9th Cir. 2010) ; In re Rosenkrantz, 29

6  Cal.4th 616, 651-53 (2002).   Therefore, "California's parole scheme gives rise to a cognizable

7  liberty interest in release on parole."  Pirtle, 611 F.3d at 1020 (quoting McQuillion, 306 F.3d at

8  902).  This liberty interest is enforceable under the federal Due Process Clause pursuant to

9  clearly established federal law.  Haggard v. Curry, 623 F.3d 1035, 1040-41 (9th Cir. 2010);

10  Cooke, 606 F.3d at 1213 (denial of parole to a California prisoner "in the absence of 'some

11  evidence' of current dangerousness . . . violat[es] . . . his federal right to due process."); Pearson,

12  606 F.3d at 609 (a state parole system that gives rise to a liberty interest in parole release is

13  enforceable under the federal Due Process Clause); Hayward, 603 F.3d at 563; see also Castelan

14  v. Campbell, No. 2:06-cv-01906-MMM, 2010 WL 3834838, at * 2 (E.D. Cal. Sept. 30, 2010)

15  (McKeown, J.) ("In other words, in requiring [federal] habeas courts to review parole denials for

16  compliance with California's 'some evidence' rule, Hayward holds that California state

17  constitutional law creates a cognizable interest in parole absent 'some evidence' of

18  dangerousness, and that the federal Due Process Clause in turn incorporates that right as a matter

19  of clearly established federal law.")

20         2.  California's Statutes and Regulations on Parole

21    When a federal court assesses whether a state parole board's suitability

22  determination was supported by "some evidence" in a habeas case, that analysis "is shaped by the

23  state regulatory, statutory, and constitutional law that governs parole suitability determinations in

24  California."  Pirtle, 611 F.3d at 1020 (citing Hayward, 603 F.3d at 561-62).   The setting of a

25  parole date for a California state prisoner is conditioned on a finding of suitability.  Cal. Penal

26  Code § 3041; Cal. Code Regs. tit. 15, §§ 2401 & 2402.  The state regulation that governs parole

suitability findings for life prisoners states as follows with regard to the statutory requirement of California Penal Code § 3041(b):  "Regardless of the length of time served, a life prisoner shall be found unsuitable for and denied parole if in the judgment of the panel the prisoner will pose an unreasonable risk of danger to society if released from prison."  Cal. Code Regs. tit. 15, § 2281(a).  In California, the overriding concern in determining parole suitability is public safety. In re Dannenberg, 34 Cal. 4th 1061, 1086 (2005).  This "core determination of 'public safety' . . . involves an assessment of an inmates *current* dangerousness."  In re Lawrence, 44  Cal. 4th at 1205 (emphasis in original).  Accordingly,

> when a court reviews a decision of the Board or the Governor, the relevant inquiry is whether some evidence supports the decision of the Board or the Governor that the inmate constitutes a current threat to public safety, and not merely whether some evidence confirms the existence of certain factual findings.

Id. at 1212 (citing In re Rosenkrantz, 29 Cal. 4th at 658; In re Dannenberg, 34 Cal. 4th at 1071; and In re Lee, 143 Cal. App.4th 1400, 1408 (2006)).  "In short, 'some evidence' of future dangerousness is indeed a state *sine qua non* for denial of parole in California."  Pirtle, 611 F.3d at 1021 (quoting Hayward, 603 F.3d at 562).  See also Cooke, 606 F.3d at 1214.[2]

Under California law, prisoners serving indeterminate prison sentences "may serve up to life in prison, but they become eligible for parole consideration after serving minimum terms of confinement."  In re Dannenberg, 34 Cal. 4th at 1078.  The Board normally sets a parole release date one year prior to the inmate's minimum eligible parole release date, and

---

[2] As the Ninth Circuit has explained, the "some evidence"

> requirement imposes substantive rather than purely procedural constraints on state officials' discretion to grant or deny parole: "a reviewing court . . . is not bound to affirm a parole decision merely because the Board or the Governor has adhered to all procedural safeguards."  In re Lawrence, 44 Cal.4th [at 1210].  Rather the court must ensure that the decision to deny parole is "supported by some evidence, not merely by a hunch or intuition."  Id. [at 1212].

Cooke, 606 F.3d at 1213-14.

does so "in a manner that will provide uniform terms for offenses of similar gravity and magnitude in respect to their threat to the public." In re Lawrence, 44 Cal. 4th at 1202 (citing Cal. Penal Code § 3041(a)). A release date must be set "unless [the Board] determines that the gravity of the current convicted offense or offenses, or the timing and gravity of current or past convicted offense or offenses, is such that consideration of the public safety requires a more lengthy period of incarceration . . . and that a parole date, therefore, cannot be fixed . . . ." Cal. Penal Code § 3041(b). In determining whether an inmate is suitable for parole, the Board must consider all relevant, reliable information available regarding

> the circumstances of the prisoner's social history; past and present mental state; past criminal history, including involvement in other criminal misconduct which is reliably documented; the base and other commitment offenses, including behavior before, during and after the crime; past and present attitude toward the crime; any conditions of treatment or control, including the use of special conditions under which the prisoner may safely be released to the community; and any other information which bears on the prisoner's suitability for release.

Cal. Code Regs., tit. 15, § 2281(b). However, "there must be more than the crime or its circumstances alone to justify the Board's or the Governor's finding of current dangerousness." Cooke, 606 F.3d at 1214. See also Lawrence, 44 Cal. 4th at 1211 ("But the statutory and regulatory mandate to normally grant parole to life prisoners who have committed murder means that, particularly after these prisoners have served their suggested base terms, the underlying circumstances of the commitment offense alone rarely will provide a valid basis for denying parole when there is strong evidence of rehabilitation and no other evidence of current dangerousness.")

The regulation identifies circumstances that tend to show suitability or unsuitability for release. Cal. Code Regs., tit. 15, § 2281(c) & (d). The following circumstances are identified as tending to show that a prisoner is suitable for release: the prisoner has no juvenile record of assaulting others or committing crimes with a potential of personal harm to victims; the prisoner has experienced reasonably stable relationships with others; the prisoner has

1   performed acts that tend to indicate the presence of remorse or has given indications that he

2   understands the nature and magnitude of his offense; the prisoner committed his crime as the

3   result of significant stress in his life; the prisoner's criminal behavior resulted from having been

4   victimized by battered women syndrome; the prisoner lacks a significant history of violent crime;

5   the prisoner's present age reduces the probability of recidivism; the prisoner has made realistic

6   plans for release or has developed marketable skills that can be put to use upon release;

7   institutional activities indicate an enhanced ability to function within the law upon release.  Id., §

8   2281(d).

9           The following circumstances are identified as tending to indicate unsuitability for

10   release:  the prisoner committed the offense in an especially heinous, atrocious, or cruel manner;

11   the prisoner had a previous record of violence; the prisoner has an unstable social history; the

12   prisoner's crime was a sadistic sexual offense; the prisoner had a lengthy history of severe mental

13   problems related to the offense; the prisoner has engaged in serious misconduct in prison.  Id., §

14   2281(c).  Factors to consider in deciding whether the prisoner's offense was committed in an

15   especially heinous, atrocious, or cruel manner include:  multiple victims were attacked, injured,

16   or killed in the same or separate incidents; the offense was carried out in a dispassionate and

17   calculated manner, such as an execution-style murder; the victim was abused, defiled or

18   mutilated during or after the offense; the offense was carried out in a manner that demonstrated

19   an exceptionally callous disregard for human suffering; the motive for the crime is inexplicable

20   or very trivial in relation to the offense.  Id., § 2281(c)(1)(A) - (E).

21           In the end, under state law as clarified by the California Supreme Court,

22       the determination whether an inmate poses a current danger is not
         dependent upon whether his or her commitment offense is more or
23       less egregious than other, similar crimes.  (*Dannenberg, supra*, 34
         Cal. 4th at pp 1083-84 [parallel citations omitted].)  Nor is it
24       dependent solely upon whether the circumstances of the offense
         exhibit viciousness above the minimum elements required for
25       conviction of that offense.  Rather, the relevant inquiry is whether
         the circumstances of the commitment offense, when considered in
26       light of other facts in the record, are such that they continue to be

10

> predictive of current dangerousness many years after commission of the offense.  This inquiry is, by necessity and by statutory mandate, an individualized one, and cannot be undertaken simply by examining the circumstances of the crime in isolation, without consideration of the passage of time or the attendant changes in the inmate's psychological or mental attitude. [citations omitted].

In re Lawrence, 44 Cal. 4th at 1221.  See also In re Shaputis, 44 Cal. 4th at 154-55.

In this federal habeas action challenging the denial of release on parole it is the court's task to determine "whether the California judicial decision approving the governor's [or the Board's] decision rejecting parole was an 'unreasonable application' of the California 'some evidence' requirement, or was 'based on an unreasonable determination of the facts in light of the evidence.'"  Hayward, 603 F.3d at 563.  See also Pearson, 606 F.3d at 609 ("Hayward specifically commands federal courts to examine the reasonableness of the state court's determination of facts in light of the evidence."); Cooke, 606 F.3d at 1213.  Accordingly, below the court considers whether the Board's decision to deny parole in this case constituted an unreasonable application of the "some evidence" rule.

B. Analysis

1. Proceedings Before the Board

In addressing the factors it considered in reaching its decision that petitioner was unsuitable for parole, the Board in this case stated as follows:

> Okay.  Mr. Doss, we've returned for decision.  I'm going to deny you again for a year.  In some respects we've had an abbreviated hearing because in this Commissioner's mind there's some issues that really we're not contesting.  Okay.  Yes, your crime was serious, but you've also been in a long time for that crime, and in many ways you've performed as a good inmate, taken advantage of a lot of the programs that the institution has available.  So in this Commissioner's mind, although the crime is serious, you have served sufficient time to gain greater maturation and understanding of that crime to view that favorable factor as outweighing the negative circumstances connected to the crime.  In most ways, in many ways, you've demonstrated that you've put your time to good use.  However, your failure, or inability, I'm not sure what, to develop more concrete parole plans is of concern to us.  As your psychologist said, and I considered the recent psychological report

11

prepared January 3rd of '06 by John Rouse.  In the last sentence, "if Mr. Doss would be considered for a parole date, such an offer should include continued self-help programming for substance abuse."  And then above that he talks about those gains being continued.  It's our belief that given your situation that the problem presented by your not having concrete plans is that in the an [sic] sense a more structured environment illustrated by a housing situation, and a work situation, structured such that that assured that [sic] continued participation in AA and similar programs, and what I'm talking about is the structured living halfway environment.  Now, it appears from your preliminary discussions that you are aware generally that – or maybe, it's because the Board is sent [sic] you that way, I don't know, but I've got to say, I've seen many inmates come in here who have looked into the availability of specific programs much more than you have and developed concrete plans to get into that environment, and we don't see that in you, and absent that demonstrated commitment, we have doubts about your ability to succeed.  Now, I want you to clearly understand that.  Number one, I have no quarrel with going to Arizona; however, you need to continue to document that as an ultimate plan because that's going to be considered in your transfer request.  Your transfer request is not going to be considered until you're out, so you need California plans, preferably in the Bay Area because that's where your commitment is from.  That's where you were living at the time.  There are programs in the bay area, inpatient programs.  Delancy Street is a program that comes to mind.  There are other programs that your counselor can talk about.  What you need to do is write specific letters to them about you, who you are, what your situation is, what your expectations are, and then you'll get letters back from them.  You need to keep in touch with them, such that – and they'll tell you, as we've heard, okay, you sound like you may be good for our program, but we're not going to commit to you until you get a date.  We understand that.  But if you have that level of focus as to where you want to go, okay, then in my experience, I can't speak for other commissioners, but I have granted dates to people and said, okay, now you've got 120 days to let them know you're coming, that you have the ability to get out, to commit to you because your parole plans are going to be reviewed, okay.  So I'm willing to go that far, and I believe other Commissioners are also, but you've got to go farther than you've gone now, so we're denying you for one year.  We've made it clear that that's specifically that problem with a finding of suitability in your case.  I hope we have given you sufficient information to do what you need to do.  I've also indicated on your report that should you be able to present that information to your correctional counselor that the institution ought to consider perhaps moving up your date, if there's room available to do that, so we can consider you earlier.  I'm willing to consider you at an earlier date if it can be appropriately scheduled, but you've got to go farther and get a much firmer commitment than you've been able to make.  Do you have any questions?

INMATE DOSS: Just to make sure I understand.  I provide concrete place to stay, you might consider moving my date up from the one year and see me again?

PRESIDING COMMISSIONER FARMER: I don't have the ability to guarantee you that, but what I've put on the paperwork is that you are denied for one year, but if you present concrete plans that the institution should consider moving you up.  And the reason that I can't guarantee you that is that these recommendations have been made before, and you haven't followed through with them.

INMATE DOSS: But yet –

PRESIDING COMMISSIONER FARMER: But at least –

INMATE DOSS: I can't have 120 days to get – them concrete?

PRESIDING COMMISSIONER FARMER: Not at this time.  You present them with concrete plans and then – you do what you're supposed to do, and then perhaps you can get an earlier date.  Okay.

(Decision at 31-35.)

The Board's 2006 decision reflects that the sole reason petitioner was denied a parole date is that he had not obtained parole plans in California that were deemed by the Board to be acceptable.  Specifically, it appears the Board expected petitioner to obtain a pre-release commitment to parole to a halfway house or other similar program in the San Francisco area, or at least a concrete plan to parole to a specific halfway house.  The issue before this court is whether the decision of the California Supreme Court upholding the Board's decision finding petitioner unsuitable for parole on this sole ground at his twelfth suitability hearing is "an 'unreasonable application' of the California 'some evidence' requirement, or was 'based on an unreasonable determination of the facts in light of the evidence.'"  Cooke, 606 F.3d at 1213.  The California Court of Appeal and California Supreme Court summarily denied petitioner's challenges to the Board's unfavorable suitability decision, thereby adopting the reasoning of the Superior Court as to these claims.  See Ylst v. Nunnemaker, 501 U.S. 797, 803-04 (1991).  Therefore, this court will "look through" the decisions of the Court of Appeal and Supreme Court to the decision of the Alameda County Superior Court as the basis for the state court's judgment.

13

At petitioner's 2006 parole hearing, the presiding commissioner noted that "one of the principal concerns of the last Panel was your parole plans, and in looking at your board report today, it appears that we don't have any additional information about your parole plans." (Decision at 3.)  In response, petitioner explained that it was his intention, if permitted by the parole authorities, to parole to Arizona to live with his fiancé.  (Id.)  He stated that he had a job offer, a house, and support from his fiancé in Arizona and from his daughter in another state. (Id.)  Petitioner provided the Board a letter from a prospective employer in Arizona, who stated that she had openings for "laborers and cleanup crew for clearing apartments and buildings for renovations" and would be "happy to interview" petitioner when he was "available to start working."  (Id. at 4.)

The presiding commissioner explained to petitioner that he was required to obtain parole plans in California because "you will not even be considered for transfer to Arizona until you're released here, and then you have to apply here and California has to approve that transfer and we don't know as we sit here today that any of those things are going to happen."  (Id. at 5.) Petitioner explained that he was told by the "parole office" in writing that "they would provide housing and job placement," and that after he was granted a date by the Board, he could "submit my parole plans for the out-of-state package no sooner than a 120 days prior to the parole date, and that they would go over it and see about transfer."  (Id. at 6.)  Petitioner presented the commissioners a letter to that same effect from the parole authorities.  (Id.)  The letter informed petitioner that his request for a transfer to Arizona would "not be considered for approval until you are granted a date."  (Id. at 7.)  Petitioner also informed the Board at his 2006 hearing that he had been advised by parole authorities that he would be provided with a place to live and assistance with job placement after his release but prior to his transfer to Arizona.  (Id. at 7, 9.) When asked what steps he had taken on his own to locate a place to live and employment in California, petitioner provided the Board with documentation of his letters to 'halfway houses" and drug treatment centers.  (Id. at 9-12.)

14

The presiding commissioner noted that petitioner had "made some attempts in 2001 to contact some programs, didn't get any definite commitment, but received a lot of information." (Id. at 12.) Petitioner explained that some of the programs required that applications "had to be signed by a parole officer" but that he wrote to them anyway and "explained the situation" to them. (Id. at 10.) Petitioner further clarified to the Board that he had continued to obtain information but was told his parole officer had to sign him up for placement in a halfway house. However, petitioner explained, when he was transferred to another prison, "nobody followed up" on his behalf in making the arrangements necessary to meet that requirement. (Id. at 9, 12-13.) In this regard, petitioner stated that his counselor "had the information and was supposed to call me in, and I wrote a few letters back telling him I had been transferred, and I haven't heard anything." (Id. at 13.) Petitioner also stated he had talked to his current counselor about "writing for a parole officer to sign me up for a halfway house." (Id. at 14.) He explained that he "was transferred, and the counselor never forwarded the information." (Id.) Petitioner explained later in the 2006 parole hearing that, although he was writing to facilities and to the parole authorities, he couldn't "get commitments." (Id. at 21.)

The Board reviewed a transcript of petitioner's 2001 parole suitability hearing. (Id. at 16.) During that earlier hearing, petitioner's attorney had provided a letter to the Board from a regional parole administrator, who informed petitioner that while his transfer request was pending, "if you do not have any resources, then you'll be referred to an appropriate shelter" and that "job assistance is available that will assist you with a job." (Id. at 16.) Petitioner explained at his 2006 hearing that in light of this letter he was relying on the Parole Division to provide him with housing prior to his transfer to Arizona because "it's the only people I have in California." (Id. at 17.) Petitioner explained that his family resided out of California. (Id.) Petitioner also stated that he believed he could get a job in California. (Id.)

The presiding commissioner informed petitioner that he had "seen many persons who have expressed desire to go to a halfway house," and that it was "sometimes difficult for

15

them to get an absolute confirmation pending a date," but that some inmates "seem to know much more about where it is they wish to go and be able to more clearly express their intentions on where they want to go and why they want to go there.  They've looked into programs much more than I see from you."  (<u>Id.</u> at 17-18.)  Petitioner was advised that it was up to him to find suitable parole plans in California and that if the Board did not have confidence that petitioner could provide for himself, they were "going to have doubts about your suitability."  (<u>Id.</u> at 18.)  Petitioner was reminded that "this concern about California parole plans has been raised at several hearings" but that "we don't appear to have made any progress."  (<u>Id.</u> at 18-19.)  The presiding commissioner stated that he did not have any further questions to ask petitioner "because to me this is the crux of the issue."  (<u>Id.</u> at 19.)  The presiding commissioner further noted that his "concerns relate to parole plans, and those concerns are still substantial" and that "the issue seems to have been for the last several hearings, viability of parole, so that seems to be the crux of the discussion today."  (<u>Id.</u> at 19-20.)

Upon questioning by his attorney, petitioner confirmed that he had "made every effort possible to secure parole plans in the state of California" by "writing the parole office and other agencies."  (<u>Id.</u> at 21.)  He also agreed that he had "sent out letters to various employers, agency, et cetera, attempting to obtain both residence and employment."  (<u>Id.</u> at 21-22.)  Petitioner also acknowledged that he and his fiancé  had contacted "the interstate compact people in Sacramento regarding a transfer of parole," and had "begun that process."  (<u>Id.</u> at 22.)  Petitioner stated that he had sent "letters, requests for transfers, and to the parole agency, too, and other agencies."  (<u>Id.</u>)

In counsel's closing statement to the Board, he explained that petitioner intended to initiate an interstate compact transfer to Arizona after receiving a parole date, and that until the transfer of supervision process was completed petitioner could "stay at either the Salvation Army or one of the shelters until that particular process was completed, so in short, the parole office would always know where Mr. Doss was and what he was doing."  (<u>Id.</u> at 24-25.)  Counsel noted

16

1   that petitioner was a welder, and that his marketable skills "would allow him to get either a union

2   or nonunion job on any construction site within the community within the state of California."

3   (Id. at 25.)  Counsel argued that petitioner's "connection with the parole office and his

4   connection with Arizona are realistic parole plans."  (Id.)  When petitioner himself addressed the

5   Board in closing, he acknowledged that his parole plans were not set "in stone," but he expressed

6   the belief that "with 120 days, or six months even, I can get something in stone."  (Id. at 26.)

7               2.  Discussion

8               After taking into consideration the relevant Ninth Circuit authorities, and for the

9   reasons set forth below, this court concludes that petitioner is entitled to federal habeas relief

10  with respect to his due process challenge to the Board's March 7, 2006 decision denying him

11  parole.  At the time of the 2006 parole suitability hearing, petitioner had served approximately

12  twenty-five years of his sentence of seven years to life for kidnapping for robbery.  In 2006 the

13  Board essentially conceded that petitioner had satisfied every factor tending to indicate suitability

14  for parole, other than his parole plans, and that the nature of his crime was no longer a predictor

15  of current dangerousness.  The Board did not find that any of the factors indicating unsuitability

16  for parole were present.  At the time of the 2006 hearing petitioner's most recent psychological

17  evaluation stated that he was "an exceptional candidate for parole."  (Answer, Attach. B to Ex. 2,

18  at 24.)  The presiding commissioner agreed with petitioner's counsel that the psychological

19  evaluation was "very favorable" to petitioner.  (Decision at 20.)

20              The Board's sole concern was that petitioner had not made firm plans to live in a

21  halfway house in California upon release.  Title 15 Cal. Code Regs. § 2402(c)(8) provides that a

22  factor indicating suitability for parole is that "[t]he prisoner has made realistic plans for release or

23  has developed marketable skills that can be put to use upon release." (emphasis added.)  It is

24  undisputed that petitioner developed marketable vocational skills while incarcerated.  Petitioner

25  received a vocational certificate in welding, and had "been involved in Microprocessing

26  Fundamentals, Business Management, Proofreading, and Basic Computer Skills."  (Answer,

17

Attach. B to Ex. 2, at 4.)  The Board did not criticize petitioner's attempts to obtain marketable

skills nor did it question his ability to obtain a job after release.  It is true that petitioner had not

obtained a job offer in California at the time of his 2006 parole hearing.  However, there is no

requirement that an inmate obtain a formal job offer in order to be found suitable for parole, and

petitioner's failure to obtain such an offer does not, by itself, mean that he had not made realistic

plans for release or that he would pose a danger to society if released.  See In re Powell, 188 Cal.

App.4th 1530, 1543 (2010) (Observing that "[t]o qualify as 'realistic' a [release] plan need not be

ironclad[]" and concluding that the petitioner had met the requirements of the applicable

regulations for release based on his vocation certificates and work experience); In re Andrade,

141 Cal. App.4th 807, 817 (2006) (an inmate's parole plans need be "realistic," but need not be

"ironclad" or "foolproof"), overruled on another ground by In re Lawrence, 44 Cal.4th at 1208;

see also In re Twinn, ___Cal. App.4th___,___, 2010 WL 4723782, at *11 (Cal. App. 2 Dist.

Nov. 23, 2010) (Reversing as unsupported by the record the Governor's denial of parole that was

based on a factual finding that petitioner lacked sufficient parole plane or a means of supporting

himself and emphasizing that "the entire thrust of the applicable regulation is on practicality.") .

In any event, the record before this court establishes that at the time of his 2006 parole hearing

petitioner had an actual job offer in Arizona, the location to which he realistically intended to

transfer his parole supervision.

There is also no requirement under California law that a prisoner make firm plans

to live in a halfway house in order to be found suitable for parole.  The record is clear that

petitioner had done everything he could to obtain firm housing plans, but was either unable to

obtain a commitment from a housing authority or was informed that his parole officer needed to

make the arrangements for him.  Petitioner had not heard anything further from the parole office

after he transferred to another prison, even though he had written to them asking for assistance in

that regard.  It is completely understandable that petitioner would be unable to obtain a firm

housing commitment, when he had not yet been found suitable for release on parole and might

18

1  not be released from prison until some time in the future, if ever.  It is also understandable that

2  petitioner had not been able to secure such housing arrangements, when the state parole

3  department failed to correspond with him after his prison transfer.  In re Powell, 188 Cal.

4  App.4th at 1543 (Noting that in granting a parole date the Board may condition release on "a

5  suitable transitional placement or attending a substance abuse group" and that the Board may

6  oversee the release plan to ensure the prisoner "is put into an appropriate placement without

7  denying parole.").  Furthermore, in this case petitioner's most recent psychological report opined

8  that if he were to be considered for a parole date, "such an offer should include continued self

9  help programming for substance abuse such as AA." (Answer, Attach. B to Ex. 2, at 4.)  The

10 psychological opinion did not suggest that petitioner live in a halfway house.  In order to allay

11 any concerns about petitioner's previous substance abuse, the Board could certainly impose

12 conditions of parole that petitioner attend AA meetings or find housing in a certain type of

13 facility.  In re Powell, 188 Cal. App.4th at 1543.  In his traverse, petitioner states that he

14 "understands that continued participation in AA/NA will most likely be a condition of parole."

15 (Traverse at 4.)

16       Title 15 Cal. Code Regs. § 2402(d)(8) suggests that an inmate should have

17 "realistic plans for release."  In this case, petitioner had been informed by the parole authorities

18 that they would provide him assistance in obtaining a place to live and a job until he was able to

19 transfer his parole supervision to Arizona where the bulk of his family and support system was

20 located.  Petitioner had a welding certificate and believed he would be able to find employment

21 in that field in California for the necessary time period.  Petitioner also had a verified place to

22 live, support from his fiancé, and a job offer in Arizona.  These release plans were clearly

23 realistic and practical.  Under the circumstances of this case, the fact that petitioner had failed to

24 obtain specific commitments for a place to live and a job in the San Francisco area bear no

25 rational relationship to his current dangerousness, nor do they provide evidence that petitioner

26 would pose a danger to society if released.  The decision of the state courts rejecting petitioner's

1   claim that his right to due process was violated when the Board found him unsuitable for release

2   on parole at his twelfth parole suitability hearing on the sole ground that his parole plans were

3   not viable is an unreasonable application of the California "some evidence" requirement.

4                                                PROPER REMEDY

5                   Having determined that the state court's decision approving the Board's rejection

6   of parole in this case was an unreasonable application of the California "some evidence"

7   requirement, this court turns to consider the appropriate remedy.  The California Supreme Court

8   has held that under the California Constitution, only the executive branch has the authority to

9   make parole-suitability determinations.  In re Prather, 50 Cal. 4th 238, 253 (2010).  The court

10  concluded  that to avoid infringing on executive branch  authority, a proper order granting habeas

11  relief where the "some evidence" requirement was not properly applied should require the Board

12  to "proceed in accordance with due process of law" and not "direct the Board to reach a

13  particular result or consider only a limited category of evidence in making the parole suitability

14  determination."  Id.  In turn, the Ninth Circuit Court of Appeals has concluded that in light of the

15  duty of the federal courts to enforce liberty interests as they are defined by state law, a federal

16  habeas court may not grant a remedy in excess of that determined to be adequate to address a due

17  process violation under California law by the high court of that state.  Haggard v. Curry, 623 F.3d

18  1035, 1041-43 (9th Cir. 2010).

19                  Nonetheless, the Board's discretion on remand is, as a matter of law, limited by

20  this court's order.  As the California Supreme Court has explained:

21                  [T]he Board is required to adhere to the decision of the Court of
                    Appeal irrespective of any specific limiting directions in the court's
22                  order.  In conducting a suitability hearing after a court's grant of
                    habeas corpus relief, the Board is bound by the court's findings and
23                  conclusions regarding the evidence in the record and, in particular,
                    by the court's conclusion that no evidence in the record before the
24                  court supports the Board's determination that the prisoner is
                    unsuitable for parole.  Thus, an order generally directing the Board
25                  to proceed in accordance with due process of law does not entitle
                    the Board to "disregard a judicial determination regarding the
26                  sufficiency of the evidence [of current dangerousness] and to

                                                        20

simply repeat the same decision on the same record." ([In re] Masoner [2009] 172 Cal. App.4th [1098,] 1110, 91 Cal. Rptr.3d 689.)  Rather, a judicial order granting habeas corpus relief implicitly precludes the Board from again denying parole - unless some additional evidence (considered alone or in conjunction with other evidence in the record, and not already considered and rejected by the reviewing court) supports a determination that the prisoner remains currently dangerous. [¶]  In the majority of cases, such additional evidence will be new - that is, changes will have occurred in the prisoner's mental state, disciplinary record, or parole plans subsequent to the last parole hearing.

In re Prather, 50 Cal. 4th at 258.  See also Hardwick v. Clarke, No. Civ. S-06-672 LKK DAD P, 2010 WL 3825678, at *3 (E.D. Cal. Sept. 28, 2010) ("[T]he Board, in reviewing the August 3, 2010 hearing, would be bound by this court's conclusion that there was no evidence of petitioner's current dangerousness.")[3]

In light of the conclusion reached above regarding the denial of parole based upon this record, any further proceedings should be undertaken in an expedited fashion with petitioner being granted release on parole unless it can be demonstrated that subsequent developments require the denial of parole.  In re Prather, 50 Cal. 4th at 262 (Moreno, J., concurring); see also In re Twinn, ___Cal. App.4th___, ___, 2010 WL 4723782, at *18 (Cal. App. 2 Dist. Nov. 23, 2010) ("[W]e direct the Board to proceed in accordance with its usual procedures for release of an inmate on parole unless within 30 days of the finality of this decision the Board determines in good faith that cause for the rescission of parole may exist and initiates appropriate proceedings to determine that question."); London v. Subia, No. CIV S-07-1489-LKK-CMK-P, 2010 WL

_____

[3]  The decision in Prather leaves undisturbed the requirement under California law,

that the Board has a duty to provide the prospective parolee, as well as the court, with a definitive statement of reasons for denying parole, nor to contravene the corollary principle that [ ] the Board may not deny parole solely based on evidence that it reasonably could have produced at the previous parole hearing.

In re Prather, 50 Cal. 4th 238, 261 (2010) (Moreno, J., concurring).  See also In re McDonald, 189 Cal. App. 4th 1008, ___, 2010 WL 4296703, at *10 (Cal. App. 2 Dist. Nov. 2, 2010) ("The Board cannot, after having its parole denial decision reversed, continue to deny parole based on matters that could have been but were not raised in the original hearing.")

21

4483473, at *5 (E.D. Cal. Nov. 1, 2010) (noting that the Board is not a party in a federal habeas action and ordering the warden to release petitioner within forty-five days of the order granting habeas relief if a new parole suitability hearing is not held).

Accordingly, IT IS HEREBY RECOMMENDED that:

1. Petitioner's application for a writ of habeas corpus be granted;

2. Respondent be directed to release petitioner within thirty days unless a new parole suitability hearing is held in accordance with due process of law and in a manner consistent with this order and the decisions of the California Supreme Court and Ninth Circuit Court of Appeals addressed herein; and

3. Respondent be directed to file a status report with this court within thirty days of any order adopting these findings and recommendations advising the court of petitioner's release or, if a new suitability hearing is held within the time provided, reporting the outcome of the hearing.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within twenty-one days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections shall be served and filed within fourteen days after service of the objections.  Failure to file objections within the specified time may waive the right to appeal the District Court's order. Turner v. Duncan, 158 F.3d 449, 455 (9th Cir. 1998); Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

DATED: December 6, 2010.

_____
DALE A. DROZD
UNITED STATES MAGISTRATE JUDGE

DAD:8:doss2450.hc

22